J-S57038-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| DEVELE LAMAR REID, | : | |
| | : | |
| Appellant | : | No. 183 WDA 2016 |

Appeal from the Judgment of Sentence March 13, 2014
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0009434-2012

BEFORE:    FORD ELLIOTT, P.J.E., SHOGAN, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:    **FILED AUGUST 29, 2016**

Devele Lamar Reid (Appellant) appeals from the judgment of sentence of an aggregate term of life imprisonment imposed after being convicted of, *inter alia*, second-degree murder.  We affirm.

The trial court summarized the facts underlying this conviction as follows.

> On June 18, 2012, Michael Shearn, his brother, co-defendant Brandon Lind, and co-defendant Jon Lee were driving around in Lind's car.  Lind was driving, Lee was in the front passenger seat, and Shearn was in the back.  While they were driving, Lee received a phone call.
>
> Lee told the other occupants of the car that [Appellant] wanted to "hit a lick" or commit a robbery.  Shearn, Lee, and Lind then picked up [D.M.] on the way to Edgewood.  [D.M.] was sitting behind the driver's seat.  According to Shearn, Lee told [D.M.] what [Appellant] wanted to do and [D.M.] agreed to it.
>
> [Appellant] called Lee again and told Lee where to pick him up.  The group then drove to the Swissvale Police Station and

*Retired Senior Judge assigned to the Superior Court.

parked, waiting for [Appellant]. When [Appellant] arrived, he asked if the others knew of anyone they could hit. Lind suggested a number of people, including the victim, Jordan Coyner. Lind and Coyner went to school together. Shearn testified that he didn't know Coyner, but he knew of him, that he had "good marijuana" and made good money. He was chosen as the target because he was a "drug kingpin."

The group then drove to Homewood. [Appellant] got out of the car, entered a house, and returned with a firearm. [D.M.] identified the weapon as a semi-automatic. Shearn, Lee, and [D.M.] were in the back seat. [Appellant] passed the gun to Shearn, Lee, and [D.M.] in the back seat. Shearn refused to accept the gun. Lee took the gun and pulled down the back of the seat to put the gun in the trunk. Meanwhile, Shearn and Lind texted [] Coyner from Shearn's phone. The pair used his phone because Lee's phone was dead, [D.M.'s] was frozen, and Lind's and [Appellant's] were traceable. Shearn admitted that he sent the first text, although he had not previously acknowledged texting Coyner at all. The first text to Coyner claimed to be from Lee, asking for marijuana. Shearn admitted that he didn't want the call to be traced to him. As they drove, [Appellant] told the group about "old licks" to make them more comfortable.

They drove to a cul-de-sac in an area near Robinson Township. Lind pointed out Coyner's house. Lee, [Appellant], and [D.M.] got out of the car while Shearn and Lind remained inside. Lee removed the gun from the trunk and gave it to [Appellant]. [D.M.] was given an Air Soft pellet gun from the glove box in the middle console. Lee had no weapon at all. [D.M.] testified that Lind dropped them off in front of Coyner's house and drove further down the street. Lee and [D.M.] stood at the top of the driveway by the bushes, and [Appellant] went behind the house. Neither Lee nor [D.M.] ever entered the house. They were acting as lookouts.

[Lee] and [D.M.] heard a gunshot and saw [Appellant] running toward them from the back of the house. All three started running toward the car. [D.M.] and Lee climbed into the backseat and [Appellant] got into the front. [Appellant] handed the gun to Lee, who put it back in the trunk. When the others asked what had happened, [Appellant] told them that Coyner's

- 2 -

father had stepped out and that he had shot him in the shoulder. (In reality, [Appellant] shot and killed the robbery victim, [] Coyner). [Appellant] had taken three grams of marijuana and a firearm from the house. Shearn deleted the messages on his cell phone and Lind smashed the phone, throwing it from the car. Shearn admitted that he was afraid of the police tracing it. They drove back to Homewood where [Appellant] dropped off the gun. They then dropped off [Appellant] in Swissvale and returned to Shearn's father's house. [D.M.] walked home from there.

[On June 19, 2012, Appellant was arrested charged with criminal homicide, robbery, criminal conspiracy, and carrying a firearm without a license.] After [Appellant] was arrested, he provided a voluntary taped statement to homicide detectives on June 19, 2012. The statement was played in [c]ourt during the trial. [Appellant] basically reiterates the facts that are stated previously but added that when he told the victim to give him the money, the victim first said he had no money. After [Appellant] hit him with the gun, the victim said I have money but it is upstairs. As the victim went to go inside, he tried to shut the door on [Appellant]. As [Appellant] pushed back on the door, he stated the gun went off and he ran.

After concluding the statement to the detectives on June 19, 2012, [Appellant] was being walked from the Allegheny County homicide office to a police car. At that time, a WTAE (an ABC affiliate in Pittsburgh) television news camera and microphone were thrust at him and he admitted to the shooting and apologized. This videotape was played during trial.

The gun used to shoot [] Coyner was never found. Neither [Appellant], Lee nor Lind testified at trial, and none called character witnesses. In closing argument, trial counsel [] essentially argued for [third-degree murder] rather than a [second-degree murder] conviction.

Trial Court Opinion, 4/22/2016, at 5-8 (citations to notes of testimony and footnotes omitted).

Appellant was tried in a joint trial with Lee and Lind.[1]  A jury heard Lee's case, and the trial court heard the cases of both Lind and Appellant without a jury.  The trial court found Appellant guilty of second-degree murder, robbery, criminal conspiracy, and carrying a firearm without a license.  The trial court found Lind guilty of third-degree murder and related crimes.  The jury found Lee guilty of third-degree murder and related crimes.

On March 6, 2014, Appellant was sentenced to an aggregate term of life imprisonment.  No post-sentence motion or appeals were filed on Appellant's behalf, but on March 11, 2015, Appellant filed timely a *pro se* PCRA petition.  Appellant's post-sentence motion and direct appeal rights were reinstated *nunc pro tunc*.  Appellant filed a post-sentence motion challenging the weight of the evidence, with particular reference to the fact that Appellant's co-defendants were convicted of third-degree murder while Appellant was convicted of second-degree murder.  That post-sentence motion was filed on September 28, 2015, and was denied by operation of law on January 28, 2016.  Appellant timely filed a notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant argues that his second-degree murder conviction was against the weight of the evidence under these circumstances.  He

---

[1] D.M.'s case was transferred to juvenile court.  He pled guilty to third-degree murder, robbery, and criminal conspiracy in exchange for his testimony against Appellant, Lee, and Lind.

suggests that all defendants should have been convicted of second-degree murder or that all defendants should have been convicted of third-degree murder, and it "shocks one's sense of justice" otherwise. Appellant's Brief at 18.

We consider this argument mindful of our well-settled standard of review.

> When we review a weight-of-the-evidence challenge, we do not actually examine the underlying question; instead, we examine the trial court's exercise of discretion in resolving the challenge. This type of review is necessitated by the fact that the trial judge heard and saw the evidence presented.  Simply put, [o]ne of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.  A new trial is warranted in this context only when the verdict is so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.  Of equal importance is the precept that, [t]he finder of fact … exclusively weighs the evidence, assesses the credibility of witnesses, and may choose to believe all, part, or none of the evidence.

*Commonwealth v. Konias*, 136 A.3d 1014, 1022–23 (Pa. Super. 2016) (internal citations and quotation marks omitted).

In considering Appellant's issue, we observe that this Court has rejected specifically the claim that similarly-situated defendants have to be convicted of the same crimes or any crimes at all. *See Commonwealth v. Wallace*, 817 A.2d 485 (Pa. Super. 2002) (concluding that husband could be convicted of eight counts of endangering the welfare of children and wife

could be acquitted of those crimes even though the entire family resided together and was responsible for maintaining the home because wife had put forth efforts to clean home and husband made no efforts to do so).

Moreover, as with all arguments challenging the weight of the evidence, Appellant acknowledges that his conviction for second-degree murder was legally sufficient. While Appellant could have been convicted of third-degree murder, and his co-defendants could have been convicted of second-degree murder, this was not a requirement. "Consistent verdicts are not required provided that there is sufficient evidence to support the verdict reached." *Commonwealth v. Merbah*, 411 A.2d 244, 247 (Pa. Super. 1979).

Further, the trial court offered the following conclusions.

[T]here is remarkably little dispute about the facts of the crime itself, at least as those facts relate to [Appellant]. All of the testimony in this case, including the taped statement by [Appellant] himself, establishes that [Appellant] wanted to "hit a lick." All of the testimony shows that [Appellant] got out of the car and went to the back of Coyner's house, to an open garage door. It is undisputed [Appellant] took the gun with him inside the house. All of the testimony establishes that [Appellant] had shot someone and that he fled the scene along with two lookouts. [Appellant] doesn't claim he didn't do the things of which he has been accused and convicted, but rather that others did the same things. Given the uniformity of the testimony about the crimes committed, it is unclear which facts [Appellant] would accord greater weight.

Trial Court Opinion, 4/22/2016, at 13.

Here, Appellant's role in this conspiracy was materially different than his co-conspirators.  He was the one who came up with the idea for a robbery, secured the weapon, and then actually confronted the victim which resulted in the victim's death.  Because Appellant cannot demonstrate that the trial court abused its discretion in concluding that the verdict did not shock its conscience, he is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2016